UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

RONALD HOSEY,

            Plaintiff,            Case No. 1:23-cv-727

v.                                       Honorable Phillip J. Green

UNKNOWN MARANKA, et al.,

            Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

## Discussion

**I.     Procedural History and Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ICF officials and medical personnel: Psychologists Unknown Maranka and Unknown Norton; and Assistant Deputy Wardens Unknown Dunigan and Unknown Ferguson. (Am. Compl., ECF No. 5, PageID.26.)

Plaintiff named these same individuals as Defendants in his original complaint (ECF No. 1); however, the Court provided Plaintiff with an opportunity to file an amended complaint to clarify his claims. In the order directing Plaintiff to file an amended complaint, the Court explained that "Plaintiff's complaint, as currently pleaded, states no specific factual allegations against two of the named Defendants—Defendants Dunigan and Ferguson," and that "without providing any other context for his claims, Plaintiff simply fault[ed] Defendants Maranka and Norton for not seeing him at the times that Plaintiff wished to be seen by these Defendants for mental health care." (Order, ECF No. 4, PageID.23.) The Court advised Plaintiff that his amended complaint would supersede his original complaint "so it must include all of the Defendants that Plaintiff intend[ed] to sue and all of the claims that Plaintiff intend[ed] to raise," and that "Plaintiff must allege, in chronological order, what each Defendant did or did not do on each date." (*Id.*, PageID.24.) In response, Plaintiff filed an amended complaint, which largely restates the exact factual allegations that were in the original complaint with the addition of a paragraph that

4

sets forth the actions of Defendants Dunigan and Ferguson.  (*See* Am. Compl., ECF No. 5, PageID.27; *see also* Compl., ECF No. 1, PageID.7.)

In his amended complaint, Plaintiff alleges that on November 6, 2022, Defendant Maranka "did not respond to numerous kites [Plaintiff] submitted to [Maranka]." (Am. Compl., ECF No. 5, PageID.27.) Plaintiff claims that this "led [him] to find other means of help." (*Id.*)

At some unspecified time, Plaintiff states that he "had to go on suicide watch to get the point across that [he] need[ed] to be seen for mental and living concerns." (*Id.*)  As of November 15, 2022, Plaintiff states that he had not been seen regarding these issues. (*Id.*)  Plaintiff then went back on suicide watch from November 15, 2022, to November 30, 2022. (*Id.*)  At some unspecified time, Plaintiff states that he had "cut [his] arm with a razor." (*Id.*)

Plaintiff sent a kite to Defendant Norton at some unspecified time, and Plaintiff claims that "she did not see [him] until 2 months later when her psych[] rounds [were] monthly." (*Id.*)  Plaintiff claims that not seeing Defendant Norton "caused [him] more mental unstableness," and he tore up his paperwork, flooded his cell, and smeared feces in his cell. (*Id.*)

On December 1, 2022, "they took away [his] state-issue[d] clothing." (*Id.*)  Plaintiff alleges that "[a] lot of time passed before [he] was able to get more state-issued clothing from the facility's quartermaster," and Plaintiff spent four months "without regular clothing" from November of 2022 to March of 2023. (*Id.*)

5

Plaintiff states that Defendant Dunigan did not respond to Plaintiff's kite "for help of above issues" from December 15, 2022, to December 24, 2022. (*Id.*) On January 1, 2023, Defendant Ferugson "told [Plaintiff] to [his] face there was nothing [Ferguson] could do to help." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding his receipt of mental health care and the conditions of his confinement. As relief, Plaintiff seeks monetary damages and unspecified injunctive relief. (*Id.*, PageID.29.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In this action, the Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding Plaintiff's receipt of mental health treatment and the conditions of his confinement.

### A. Eighth Amendment Standard

#### 1. Claims Regarding Mental Health Care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent

7

to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference

8

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

9

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 2. Claims Regarding Conditions of Confinement

With respect to Eighth Amendment claims regarding the conditions of a prisoner's confinement, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

10

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to state an Eighth Amendment conditions of confinement claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

11

### B. Plaintiff's Eighth Amendment Claims

#### 1. Defendants Maranka and Norton

Turning to Plaintiff's Eighth Amendment mental health care claims, as to the objective component, based on the facts alleged by Plaintiff regarding his mental health condition, at this stage of the proceedings, the Court assumes, without deciding, that his mental health-related issues constitute a serious medical need. However, with respect to the subjective component, as explained below, Plaintiff fails to show that Defendants were deliberately indifferent to Plaintiff's medical needs.

As to Defendant Maranka, although Plaintiff alleges in a conclusory manner that on November 6, 2022, Defendant Maranka "did not respond to numerous kites [Plaintiff had] submitted to [Maranka]," Plaintiff fails to allege any facts about when he submitted these "numerous kites" (i.e., did he submit all of them on November 6, 2022, or did he submit a number of kites over a longer time period), the content of his kites to Maranka, and whether, for example, other medical personnel responded to his kites and provided mental health care. (Am. Compl., ECF No. 5, PageID.27.) Similarly, with respect to Defendant Norton, Plaintiff vaguely alleges that he was not seen by Defendant Norton, and that at an unspecified time, he sent a kite to Norton, but then Norton "did not see [him] until 2 months later when her psych[] rounds [were] monthly." (*Id.*) However, Plaintiff fails to allege any facts about the content of his kite to Defendant Norton and whether he received mental health care from other providers in response to his kite. Under these circumstances, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. *Cf. Frazier v. Michigan*, 41 F. App'x 762, 764

(6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Based on the facts alleged by Plaintiff, it is clear that he wished to have appointments with specific providers—i.e., Defendants Maranka and Norton—but, notably, Plaintiff does not allege that he did not receive mental health care treatment from other providers. Indeed, Plaintiff indicates that he went on suicide watch on multiple occasions, which suggests that he was at least being monitored by other mental health providers. Under these circumstances, Plaintiff's allegations show that he simply disagreed with the manner in which he was receiving mental health care treatment and wished to have appointments with specific providers. However, "a patient's disagreement with his physicians [or other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605; *see Hudson*, 503 U.S. at 9 (discussing that prisoners are not entitled to "unqualified access to health care" (citation omitted)).

Furthermore, although Plaintiff claims that at some unspecified time, he "had to go on suicide watch to get the point across that [he] need[ed] to be seen for mental and living concerns," and that as of November 15, 2022, he had not been seen regarding these issues, besides stating that he went on suicide watch, Plaintiff does not allege that he actually told anyone about his specific "mental and living concerns," let alone Defendants. (Am. Compl., ECF No. 5, PageID.27.) Plaintiff also claims that

13

not seeing Defendant Norton "caused [him] more mental unstableness," and he tore up his paperwork, flooded his cell, and smeared feces in his cell, and that on December 1, 2022, "they took away [his] state-issue[d] clothing." (*Id.*) Although Plaintiff blames Defendant Norton for this "mental unstableness," Plaintiff fails to allege sufficient facts to suggest that Defendants Norton and Maranka had any knowledge of his medical needs at that time, let alone that they knew about his medical needs and disregarded them. *See Farmer*, 511 U.S. at 837.

Likewise, as to Plaintiff's conditions of confinement claim, Plaintiff fails to allege any facts to suggest that Defendants Norton and Maranka had any knowledge of Plaintiff's concerns regarding his living conditions and inability to obtain "regular clothing" from the quartermaster at URF. (*See* Am. Compl., ECF No. 5, PageID.27.) Plaintiff therefore fails to allege sufficient facts to show that Defendants Maranka and Norton were personally involved in the alleged violations of his constitutional rights. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Accordingly, for all of the reasons set forth above, Plaintiff fails to state any Eighth Amendment claim against Defendants Maranka and Norton.

### 2. Defendants Dunigan and Ferguson

With respect to Defendants Dunigan and Ferguson, administrative or custody officials, such as these Defendants, who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (holding that a custody

officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

Moreover, even setting aside this issue, Plaintiff still fails to state any claim against Defendants. Plaintiff vaguely alleges that Defendant Dunigan did not respond to Plaintiff's kite "for help of [the] above issues" on December 15, 2022, to December 24, 2022; however, Plaintiff does not explain whether Defendant Dunigan or someone else ultimately responded to his kite after December 24, 2022, and he does not explain what specific information he included in the kite. (Am. Compl., ECF No. 5, PageID.27.) Based on the facts alleged by Plaintiff, he fails to allege sufficient facts to show that Defendant Dunigan knew of, and disregarded, both Plaintiff's medical needs and Plaintiff's concerns regarding the conditions of his confinement. *Cf. Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008) (discussing that a claimed constitutional violation must be based upon active unconstitutional behavior); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

With respect to Defendant Ferguson, Plaintiff alleges that he spoke with Defendant Ferugson in person on January 1, 2023, and Ferguson stated that "there was nothing he could do to help." (Am. Compl., ECF No. 5, PageID.27.) However, Plaintiff does not allege any facts about what he specifically told Defendant Ferguson. Under these circumstances, Plaintiff necessarily fails to show that Ferguson acted with deliberate indifference to a substantial risk of harm to Plaintiff's health or safety, including the conditions of his confinement, because Plaintiff has not explained what he told Ferguson. Showing that defendants have knowledge of a substantial risk of harm is an essential element of an Eighth Amendment deliberate indifference claim. Without knowing what Plaintiff told Defendant Ferguson, there are no facts in the complaint to suggest that Ferguson's response was unreasonable, let alone deliberately indifferent.

Furthermore, as to Plaintiff's claim that he was unable to obtain "regular clothing" from the quartermaster, Plaintiff fails to allege any facts suggesting that Defendants Dunigan and Ferguson had any knowledge of Plaintiff's inability to obtain this clothing. (*See* Am. Compl., ECF No. 5, PageID.27); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, for the reasons set forth above, Plaintiff fails to state any Eighth Amendment claim against Defendants Dunigan and Ferguson.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: __October 25, 2023__          /s/ Phillip J. Green
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge